## MANSFIELD ET AL. *v.* GOLDSMITH BANK.

[No. 12,011. Filed December 9, 1924.]

1. BANKS AND BANKING.—*Acceptance of check by drawee must be in writing.*—Under the provisions of the Negotiable Instruments Law (Acts 1913 p. 130, §132, §9089b5 Burns 1914), the acceptance of a check by the drawee must be in writing, and an action cannot be maintained on a parol acceptance. p. 225.

2. BANKS AND BANKING.—*Bank's parol promise to pay check invalid.*—Since the enactment of the Negotiable Instruments Law (Acts 1913 p. 130, §132, §9089b5 Burns 1914), a parol promise by the drawee bank to pay a check drawn thereon, in consideration that the promisee will cash the check, is not enforceable, as it would be a mere device to avoid a positive statute. p. 226.

From Tipton Circuit Court; *James M. Purvis*, Judge.

Action by Leroy A. Mansfield and others against the Goldsmith Bank. From a judgment for defendants, the plaintiffs appeal. *Affirmed.*

*Bingham & Bingham, James Bingham* and *Remster A. Bingham*, for appellants.

*Cleon Wade Mount*, for appellee.

BATMAN, J.—Appellants filed a complaint against appellee, which alleges, in substance, among other things, that on July 31, 1922, one Harry L. Dick, a person well known to, and a patron and depositor of, appellee, came into the office of appellants at the Union Stock Yards, in the city of Indianapolis, Indiana, and requested them to cash a check upon appellee, then engaged in the banking business in Goldsmith, Indiana, said check, as shown by a copy thereof set out in full in the complaint, being for $325, dated July 31, 1922, and drawn on appellee by said Dick, in favor of appel-

lants; that appellants declined said request, and thereupon said Dick, by telephone, advised appellee of such fact, and placed appellants and appellee in telephonic communication, in which the latter stated to the former "that said check of said Harry L. Dick was good, and if cashed by plaintiffs (appellants) would be paid when presented"; that appellants then and there, and through the means stated, advised appellee that, in reliance on its said statement, they would cash said check; that, in reliance thereon, appellants cashed the same, by paying to said Dick therefor the sum of $325, being the face value thereof, and accepted said check from said Dick; that immediately thereafter, appellants, in reliance upon said agreement and representation, so made by appellee as aforesaid, caused said check to be presented to appellee for payment, but payment was refused, and the same was allowed to go to protest; that appellants demanded payment of appellee during business hours, at its banking office in Goldsmith, Indiana, before the beginning of this action; that appellee refused to pay said check, and the same is now due and wholly unpaid, all to appellants' damage in the sum of $500. To this complaint, appellee filed a demurrer for want of facts, which was sustained, and appellants refusing to plead further, judgment was rendered against them for costs. Appellants are now prosecuting this appeal, based on the adverse ruling stated.

It is clear to us that the complaint is based on an alleged accepted check. The acceptance relied upon, however, is alleged to have been made in a conversation over the telephone, and hence rests in parol. This being true, no liability against appellee is shown, by reason of §§185, 189, and 132 of the Negotiable Instruments Act (Acts 1913 p. 120), which reads as follows:

VOL. 82—15

"185. A· check is a bill of exchange drawn on a bank payable on demand. Except as herein otherwise provided, the provisions of this act applicable to a bill of exchange payable on demand apply to a check. 189. A check of itself does not operate as an. assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check. 132. The acceptance of a bill is the signification by the drawee of his assent to the order of the drawer. The acceptance must be in writing and signed by the drawee. It must not express that the drawee .will perform his promise by other means than the payment of money." §§9089c7, 9089g7 and 9089b5 Burns 1914.

The provisions of these sections are so clear, and their application to the facts alleged are so apparent, as to render argument unnecessary. See *Ballen* v. *Bank of Kremlin* (1913), 37 Okla. 112, 130 Pac. 539, 44 L. R. A. (N. S.) 621.

Appellants seek to avoid the conclusion we have stated by asserting that their action is not based upon the accepted check, but upon appellee's promise to pay them the amount thereof, in consideration of their cashing the same. We are unable to recognize and give effect to any such distinction. The authorities are abundant that the language alleged to have been used by appellee in its conversation with appellants over the telephone, with reference to the check in question, is sufficient to constitute an enforceable acceptance thereof, had it been in writing, as the statute requires. Had the use of such language been so evidenced, appellee's liability as an acceptor of the check would be clearly apparent. Now, since it was not so evidenced, does that fact change the nature of the transaction, or does its nature remain the same, the only difference being that in the one case, an enforceable obligation is created,

while in the other, no such obligation results, because of the statute which forbids it? To give a parol promise to pay a check the same effect as the written acceptance thereof, by construing the transaction to be something different from what it really is, would be a mere device to avoid a positive statute, and thereby defeat the ends which the legislature designed to effect by its enactment, since all the mischiefs of a parol acceptance would attach to all promises like the one under consideration. *Baer* v. *English & Co.* (1889), 84 Ga. 403, 11 S. E. 453, 20 Am. St. 372. The legal effect of a parol promise to pay a check is considered in the case of *Ewing* v. *Citizens Nat. Bank* (1915), 162 Ky. 551, 172 S. W. 955, and a decision announced which strongly supports the conclusion reached in the instant case. We conclude there was no error in overruling the demurrer.

Judgment affirmed.