CLARENCE MCKENZIE, DEFENDANT IN ERROR, v. MISSOURI STABLES, INC., A CORPORATION, PLAINTIFF IN ERROR.—34 S. W. (2d) 136.

St. Louis Court of Appeals. Opinion filed December 2, 1930.

*Jones, Hocker, Sullivan & Angert* for plaintiff in error.

*Judson, Green, Henry & Remmers* and *Jos. J. Tomasso* for defendant in error.

BENNICK, C.—This is a proceeding by writ of error sued out in this court by Missouri Stables, Inc., hereinafter to be referred to as the defendant, which it was in the action brought against it below, by Clarence McKenzie, the plaintiff.

The petition alleged that on January 31, 1929, plaintiff, while in the employ of the J. A. Schaefer Construction Company, was engaged in dumping earth upon the premises of the defendant under the latter's direction, and that while so doing, he was injured as the direct and proximate result of defendant's negligence in several respects pointed out.

There was the further allegation that following said injuries, plaintiff's employer, the J. A. Schaefer Construction Company, had paid plaintiff certain compensation pursuant to the operation of the Workmen's Compensation Act, and in the same connection had paid for the services of his physician; and that under the law, said company was subrogated to plaintiff, and he was required to turn over to it the amount of compensation paid to him out of any amount recovered by him from defendant, as a third party responsible for his injuries and damage.

The prayer of the petition was for damages in the sum of $10,000.

Although due service of summons was had upon defendant, it filed no answer. Thereafter a default was rendered against it, and an inquiry as to damages granted, resulting in the entry of a judgment for plaintiff, and against defendant, for the sum of $3000.

Defendant has but one point for our consideration, which is that the court erred in entering judgment against it, the contention being that the petition wholly failed to state a cause of action on behalf of plaintiff, because under the Workmen's Compensation Act (Laws 1927, pp. 490-522), as counsel would have us construe it, the right of action against defendant to recover for the injuries sustained by plaintiff was in plaintiff's employer, the J. A. Schaefer Construction Company, or in the latter's insurance carrier, and not in the plaintiff himself.

The procedure to be followed in the enforcement of third-party liability has been a vexatious question for determination by the courts of every state that has adopted a compensation act. The statutes of the different states differ so widely in their terms and provisions that decisions based upon such statutes are not greatly helpful to us in the construction and interpretation of our own act. For example, in certain instances the acts provide that in case of third-party liability, the injured employee must elect between an action for damages and a claim against his employer; that if a claim against the employer is elected, the right to sue passes to the person or fund liable for compensation; and that if election is made to proceed directly against the third party, the employer's subsequent liability for compensation will be limited to the difference between the amount recovered in such action and the benefits provided by the act. Other acts provide that the employer from whom compensation has been claimed may proceed, either in his own name or in the name of the employee, to recover damages from the third party, any excess over the compensation award, with costs, to go to the injured employee or his dependents. In other instances the employee may proceed against both the third party and his employer, but shall not be entitled to both damages and compensation, and if compensation is obtained, the employer may have indemnity for such compensation from the third party. Still other acts provide that the making of a claim for compensation shall not affect the employee's right of action for damages; that the employer, having paid or become obligated to pay compensation, may likewise bring an action for damages against the third party; that if either the employee or his employer bring such action he shall forthwith notify the other of such fact, so that the other may join as party plaintiff; and that if the actions are brought by both independently of each other, the court shall consolidate them.

The particular section of our own act governing third-party liability is section 11, which reads as follows:

"Where a third person is liable to the employee or to the dependents, for the injury or death, the employer shall be subrogated to the right of the employee or to the dependents against such third person, and the recovery by such employer shall not be limited to the amount payable as compensation to such employee or dependents, but such employer may recover any amount which such employee or his dependents would have been entitled to recover. Any recovery by the employer against such third person, in excess of the compensation paid by the employer, after deducting the expenses of making such recovery shall be paid forthwith to the employee or to the dependents, and shall be treated as an advance payment by the employer, on account of any future installments of compensation."

Obviously this section was embodied in the act for the protection and benefit of the employer liable for compensation; and, as its provisions plainly imply, it gives to the employer the right of subrogation, which, primarily, is a device adopted or invented by equity to compel the ultimate discharge of a debt or obligation by the one who in fairness and good conscience ought to pay it. Though the doctrine is equitable in its origin, the right acquired is generally referred to as legal subrogation; and if the term is used without qualification, it is ordinarily legal subrogation which is meant, as distinguished from conventional subrogation, which depends upon the existence of a lawful contract, and arises by act of the parties. Undoubtedly it is the latter which is provided for by the section supra, for the entire compensation act is contractual in its nature as between employer and employee; and by the inclusion of the subrogation statute therein, the employer who is made liable by law, regardless of the fault of others, is readily afforded the protection which he would otherwise be forced to secure by a more circuitous route.

It is by section 3 of the act that the employer's liability for compensation is fixed and established, so long as the injury or death is by accident arising out of and in the course of the employment, and irrespective of the fact that the proximate cause of such injury or death may, as in this instance, be the negligence of a third party. Furthermore, the subsequent provision of that section, that the rights and remedies granted therein to the injured employee or his dependents shall exclude all other rights and remedies at common law or otherwise, applies only to rights and remedies theretofore existing in favor of the employee or his dependents against the employer, so the cases hold, and does not of itself take away the employee's common-law right of action against the offending party. Consequently, the right of the injured employee to proceed directly against the third party, as he has attempted to do in this case, is not affected by our compensation act, unless it be by section 11, which provides that the employer shall be subrogated to the rights of the employee against such third party.

Bearing in mind that the evident purpose of section 11 is only to provide indemnity to the employer for the compensation payable by him, there is nevertheless no doubt that it gives him the right to bring and prosecute the action for damages, not *pro tanto,* but in its entirety. However, it nowhere provides that the employee may not himself sue for his injuries, as would have to be the case if defendant's contention in this proceeding were to be held well-taken. What the section does contemplate, beyond peradventure of doubt, is that both the employer and the employee have beneficial interests in the cause of action, the employer being interested in securing indemnity for himself for the amount of compensation payable by him,

and the employee being interested in obtaining whatever surplus may remain after his employer has been indemnified. Consequently, without regard to where the pure legal title to the cause of action may be, either the employee or the employer is plainly a real party in interest, and of whatever sum he recovers from the third party, he is, in part at least, the trustee of an express trust, the employee to see that the employer's right of subrogation is protected, and the employer to see that the employee secures the surplus remaining after he himself is indemnified.

It is to be presumed that in the enactment of our compensation act, the Legislature had in mind our local rules of practice, as well as the sections of the general law relating to the form of actions and parties thereto, being Chapter 12, of Article 1, Revised Statutes 1919. Section 1155 thereof provides that every action shall be prosecuted in the name of the real party in interest, except as otherwise provided by section 1156, the exception thereby created being that a person in a fiduciary capacity such as the trustee of an express trust, or a person expressly authorized by statute, may sue in his own name without joining with him the person for whose benefit the suit is prosecuted. Conversely it is well settled in our decisions that this statute does not preclude the beneficiary from prosecuting a suit without joining the trustee.

It follows, therefore, that the employer may sue in his own name without joining the injured employee, not only because he is the trustee of an express trust in the manner that we have pointed out, but also because the subrogation statute seems to give him that right. But it follows with equal propriety that the employee, who in any event is the beneficiary contemplated by the statute, may also sue without joining the employer. By this conclusion we do not intend to say that both the employer and the employee might not be proper parties plaintiff to the action, or that for the protection of the rights of all parties to the controversy the employer or the employee might not come or be brought into the action, either upon his own motion, or by motion of one of the other parties thereto. All such discussion is reserved for a case where the point is timely raised and properly presented, for here no question of defect of parties was raised in the lower court, and hence the matter could in no event be put in issue at this late stage of appellate review. Suffice it to say that under any consideration, plaintiff was a real party in interest, with the legal capacity to sue, so that defendant's contention that the employer alone might have brought the action is unavailing.

In this respect the situation now before this court is very like the case of Gould v. Chicago, B. & Q. R. Co., 315 Mo. 713, 290 S. W. 135, recently decided by our Supreme Court. There the plaintiff, who was a soldier during the late war, brought an action against the

railroad company for damages for injuries sustained through its negligence while he was guarding a bridge under the orders of his superiors. He recovered a judgment for $15,000. It appeared at the trial that he had previously received compensation from the government in the sum of $2,000, under the provisions of the War Risk Insurance Act. This act provided, among other things, that as a condition to the payment of compensation by the government, it might require the beneficiary to assign to it any right of action he had against a third party upon whom a legal liability was created. The contention of the railroad company before the Supreme Court was that the plaintiff, having received compensation under that act, was not the real party in interest, and was therefore not entitled to maintain the action. The Court held, in construing the statute, that the cause of action did not stand assigned to the government as a matter of law. But it held further that if it did stand so assigned (which is the very effect that counsel would have us ascribe to section 11 of our compensation act), the beneficial interest of the injured man in his cause of action, over and above the right of the government to be recompensed for the payment of compensation and costs, was such as to entitle him to maintain the same as a real party in interest, and that it was of no concern to the railroad company that the government might be entitled to a portion or all of the proceeds of the suit.

So here, the plaintiff, McKenzie, is likewise a real party in interest, and entitled to maintain the action, whether it be that the legal title thereto has all the while been vested in him, which we do not decide, or for the reason that he prosecutes the same in his own name as beneficiary; and it is of no great consequence to the defendant in whose name the action is brought, since in either event the cause of action is the same, and is for the benefit of both the employee and the employer, and as to the third party, both the employee and the employer are concluded by it.

As opposed to the construction which we have thus put upon section 11, defendant relies chiefly upon the decision of the Nebraska Supreme Court in O'Donnell v. Baker Ice Machine Co., 114 Neb. 9, 205 N. W. 561. Incidentally it may be stated that our section 11 is an exact copy of the Nebraska statute as it read at the time of the passage of our act, the same being Section 3041, Compiled Statutes of Nebraska, 1922. In construing such statute, the Nebraska court held in the O'Donnell case that the right to bring an action under the subrogation statute was vested exclusively in the employer until he neglected or refused to bring the same, in which event the employee might himself bring the action, by pleading and proving the employer's neglect or refusal.

We appreciate the rule that our Legislature, in adopting a foreign statute, is presumed also to adopt the construction theretofore put

upon the statute by the highest court of the state of original enactment. However, the rule giving rise to such presumption is subject to the qualification that at the time of its adoption, the terms of the statute must have acquired a known and settled meaning, and a definite application, in the courts of the jurisdiction from which it was taken; that after all, such construction can never amount to more than persuasive authority as to the true intent and meaning of the statute, and the proper application of its terms; and that it will not be permitted to prevail against a plain and obvious interpretation of the statute, or countervail the general policy of our own local laws and practice. [Pratt v. Miller, 109 Mo. 78, 18 S. W. 965; State ex rel. v. Becker, 289 Mo. 660, 233 S. W. 641.]

It happens in this instance that the decision in the O'Donnell case was not handed down until some months after the passage of our local act, so here there is no presumption that our Legislature intended for the act to be construed as the Nebraska court did subsequently construe it. We might nevertheless allow ourselves to be persuaded as to the correctness of the construction so put upon the statute, were it not for the fact, as we have heretofore pointed out, that it countervails well-settled laws and practices as to rights acquired by subrogation and the identification of real parties in interest. But beyond all this, the construction given a statute by a court of a sister state should not be adopted by us, unless there is no escape from the same conclusion, when that construction has failed to meet with popular acclaim and approval in the sister state itself. In this connection it is highly significant that shortly following the promulgation of the O'Donnell decision, the Nebraska Legislature amended the very statute under consideration by adding the proviso that nothing in such section should be construed to deny the right of the injured employee to bring suit against the third party in his own name, but in such event the employer, having paid or paying compensation, should be made a party to the suit for the purpose of reimbursement, under his right of subrogation, of any compensation paid. [Laws of Nebraska, 1929, page 489.]

Thus far we have spoken abstractly of the right of the injured employee to maintain a suit against the third party. Certainly, in legal theory, the right of his dependents to sue for his death would follow with equal propriety. As to this we express no opinion, the point not being before us, save that we do not wish to be understood as holding that section 11 of the compensation act creates any new cause of action; that it constitutes any abridgment of the wrongful death statute; or that it in anywise changes or limits the general rule that where a statute gives a cause of action, and points out the persons who may sue, they and they alone can sue, and they must sue within the time prescribed thereby.

For the reasons stated, the judgment rendered by the circuit court should be affirmed, and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, affirmed. *Haid, P. J.,* and *Becker* and *Nipper, JJ.,* concur.

## ON MOTION FOR REHEARING.

BENNICK, C.—A very able motion for rehearing has been filed by learned counsel for defendant (plaintiff in error) in which they challenge the propriety of our construction of Section 11 of the Compensation Act to the effect that notwithstanding the rights which definitely and affirmatively accrue to the employer thereunder, the injured employee is nevertheless a real party in interest to the action against the negligent third party, with the consequent right to maintain the action against him, in the employee's own name, and on his own behalf.

The points they make against our decision are that we have failed to distinguish between the rights acquired by subrogation as against an assignment, and have confused the two theories of the law, with the result that we have been led to construe the statute as though the employer were merely an assignee of the employee's cause of action rather than a subrogee to all rights which the employee would otherwise have possessed; that in holding that the employee is entitled to prosecute the action as a beneficiary, we have confused the right of action with the right to the proceeds of the action, inasmuch as in their view of the law no trust can arise in favor of the employee until an action has been brought by the employer, and a judgment recovered against the third party in excess of the compensation payable to the employee under the act; and that in holding that a judgment obtained by the employee would bar a subsequent action against the third party by the employer, we have deprived the employer of the right of action given him by the statute, and have gone contrary to the interpretation which the courts of last resort of other jurisdictions have given alleged similar provisions in local acts.

Considering these matters in the order stated, we are brought at the outset to the determination of whether we have construed the statute as though the employer's rights come to him by assignment from the employee; and, if so, whether we were correct in that construction.

Now there is no doubt that the statute does use the term "subrogated" in speaking of the rights which the employer acquires; and

it is further true, as counsel insist, that subrogation in its purest and broadest sense is the substitution of one person in the place of another with reference to the other's claim, which change in identity carries along with it a complete transfer to the subrogee of all the rights and remedies of the subrogor. However, it is equally true that the term is not always employed in this conclusive character, but, as we pointed out in our principal opinion, it is very frequently used to refer to a conventional subrogation arising out of contract between the parties, which counsel concede in their motion to mean nothing more than an assignment. Consequently, if the Legislature had the idea of true legal subrogation, or complete substitution of parties, in mind in the enactment of the statute, then counsel are doubtless correct in the construction which they would have us put upon it; but if the Legislature used the term in the conventional sense, as synonymous with assignment, it follows that our own interpretation of the statute is sound, and that the employer obtains only an interest in the cause of action by virtue of its provisions.

To our minds it is quite obvious that the Legislature in the use of the term had no idea of referring to subrogation in its widest and fullest sense, for the reason that there are too many variations and inconsistencies between the rights conferred upon and vested in the employer under the statute, and those he would acquire under the general scope of legal subrogation. For instance, subrogation in its true sense proceeds only upon the theory that payment has been made in full (State ex rel. v. Daues (Mo. Sup.), 289 S. W. 550), while under the statute the right of the employer is acquired as soon as the third party's liability attaches, and it goes to the entire amount of compensation which is payable by him, past, present, and future. Then too, it is accepted doctrine that true subrogation lies only where one secondarily liable pays the debt of another, and not where one primarily liable pays his own debt. [St. Louis & S. F. Ry. Co. v. Excello Feed Milling Co. (Mo. App.), 215 S. W. 755; Plate Glass Underwriters' Mut. Ins. Co. v. Ridgewood R. Co., 219 Mo. App. 186, 269 S. W. 659.] Here it is the employer's own debt which he pays to the employee under the provisions of the act, and not the debt of the third party; for granting that the liabilities of both the employer and the third party arise from the same accident, their respective obligations are measured by different rules and upon different theories, the employer is in no sense of the law a surety for the discharge of the liability of the third person, and in fact the employer may well be liable to the employee for compensation when, under the law of negligence, there is no liability upon the third party at all. In other words the employee has two concurrent and consistent remedies; and while it is true that he is not permitted to retain a double recovery, and that of whatever sum is ultimately recovered from the third party in the common-law

action for damages the employer is entitled to be recompensed for the compensation for which he is liable, all this goes only to show that it is indemnity, and not true subrogation, for which the act provides.

Added to this is the further thought, which was expressed in our principal opinion, that even though the subrogation of the employer follows from the terms of the statute, and would therefore appear at first blush to arise purely by operation of law, yet the entire act is contractual as between employer and employee, and the subrogation statute is but part and parcel of the contract. Of course, we recognize the fact that even a right of pure legal subrogation may be provided for in a contract, though even so the exercise of the right will nevertheless have its basis in general principles of equity, rather than in the contract which will be treated as being merely a declaration of principles of law already existing. [Loewenstein v. Queen Insurance Co., 227 Mo. 100, 127 S. W. 72.] This means, as we understand the doctrine, that where one claims a legal subrogation by virtue of the provisions of a contract, the rights which he asserts thereunder must be such as the law would have vouchsafed to him in the absence of the contract, else the transfer of right will partake of the nature of an assignment.

Thus, if Section 11 had been omitted from our act, would the law nevertheless afford the employer the same rights as he now acquires by reason of its terms? We think not. Certainly under all principles of justice it would preclude the employee from retaining a double recovery; and inasmuch as the liability of the third party is made to continue, it would grant *pro tanto* indemnification to the employer for the compensation paid by him. However, unless the doctrine of legal subrogation is to be extended beyond the limits which have heretofore been regarded as fixed, we cannot believe that the law, in the furtherance of principles of equity and under the guise of such doctrine, would transfer to the employer an interest in the employee's cause of action immediately upon the accrual of the third party's apparent liability, before the employer had paid the compensation either in part or in full, and despite the fact that the common-law liability of the third party would in most instances be far in excess of the statutory liability of the employer, and that the debt which the employer was called upon to discharge was primarily his own and not that of the third party. And this conclusion, it must be noted, is put upon the basis of what we think the statute actually says, and not what the proponents of legal subrogation claim for it.

In view of all these circumstances, we cannot escape the conclusion that the subrogation provided for in the act arises by convention, and that in legal effect the rights acquired by the employer are by assignment. If this conclusion is sound, then there is no contro-

versy over the fact that the case of Gould v. Chicago, B. & Q. R. Co., 315 Mo. 713, 290 S. W. 135, is directly in point and controlling, and that the holding in our principal opinion is correct.

The point that we have confused the right of action with the right to the proceeds of the action, and that no trust can arise in favor of the employee until an action has been brought by the employer and a judgment recovered against the third party in excess of the compensation payable to the employee under the act, is equally unavailing. Of course it goes without saying that if the employee is to sue as beneficiary, the employer must be a trustee within the meaning of the statute; and certainly for the purposes of maintaining an action, one may be the trustee of an express trust before there is a judgment collected. Familiar illustrations of this fact are to be found in the case of the assignee of a chose in action, or a claim or demand, to be sued upon and collected (Citizens Trust Co. v. Tindle, 272 Mo. 681, 199 S. W. 1025; Coffman v. Saline Valley R. Co., 183 Mo. App. 622, 167 S. W. 1053; Howe v. Mittelberg, 96 Mo. App. 490, 70 S. W. 396), as well as in the case of the insured in a policy of fire insurance containing a loss-payable clause. [Anthony v. The German American Ins. Co., 48 Mo. App. 65; Florea v. Iowa State Insurance Co. (Mo. App.), 32 S. W. (2d) 111, 115.]

Nor may it be said, as counsel argue, that a beneficiary within the contemplation of the statute is necessarily restricted to one for whose benefit a contract is made between two other persons. The Gould case, supra, is a fair example of the correctness of what we are saying, for there the plaintiff was held entitled to sue as beneficiary, without any pretense that there was a contract for his benefit between the government and the railroad company. In fact, the underlying purpose of our code was and is to simplify matters of pleading and procedure, and to adopt the rule in equity permitting all suits to be brought by the beneficial owner of the cause of action as the real party in interest.

As to the last charge in the motion, that in holding that a judgment obtained by the employee would bar a subsequent action by the employer we have deprived the employer of the right of action given him by statute, counsel concede that the same must necessarily be the law, if the major result reached in our opinion is to stand.

Finally counsel make mention of the Nebraska rule, which we have heretofore refused to follow. In this connection the thought has occurred to us that if the Legislature of that state could positively express its intention in the matter by adding to the identical statute the proviso that nothing therein contained should be construed to deny the right of the injured employee to bring suit against the third party in his own name, then, absent a positive expression of such intention as is the situation here, why may not the court nevertheless so construe the statute on its own part, if it finds that

78

such construction is in accord with general local laws and practices, and that the legislative intent was so indicated throughout the act? In other words, if there is no inconsistency between the terms of the original statute and the proviso added to it by the Nebraska Legislature, then likewise there is no inconsistency between the statute and the construction which we ourselves have put upon it.

For these reasons the motion of plaintiff in error for a rehearing should be overruled, and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of Bennick, C., is adopted as the opinion of the court. The motion of plaintiff in error for a rehearing is, accordingly, overruled. *Haid, P. J.*, and *Becker* and *Nipper, JJ.*, concur.